UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 22 Cr. 618 (JPC)

CHRISTOPHER BURGOS,

Arraignment

Defendant.

------------------------------x

New York, N.Y.
December 1, 2022
9:00 a.m.

Before:

HON. JOHN PETER CRONAN,

U.S. District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
MATTHEW SHAHABIAN
Assistant United States Attorney

JEREMY M. IANDOLO
Attorney for Defendant

(Case called)

MR. SHAHABIAN: Good morning, your Honor. Matthew Shahabian appearing for the government.

THE COURT: Good morning.

MR. IANDOLO: Good morning, Your Honor. Jeremy Iandolo appearing for Mr. Burgos.

I want to thank the Court for adjourning the matter due to my health. Thank you.

THE COURT: Good morning, and good to see you. I hope everything is okay.

MR. IANDOLO: Thank you, your Honor.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: We're here for Mr. Burgos' arraignment and initial pretrial conference. I want to confirm the history of this case and also where things stand with codefendant. Mr. Burgos was arrested it appears around November 16, presented before Judge Willis, and released on bail.

Was that an agreed upon package? Was there a bail argument there?

MR. SHAHABIAN: There was a bail argument, your Honor.

THE COURT: I take it the conditions have been satisfied.

MR. SHAHABIAN: Yes, your Honor.

THE COURT: It appears other defendants are charged in this case, not in one indictment but individually; is that

correct?

MR. SHAHABIAN: Correct, your Honor. Each defendant is charged in a separate indictment.

THE COURT: Is there a plan to do a superseder later with everyone else or with everyone in one I guess?

MR. SHAHABIAN: I think that's reasonably foreseeable, yes.

THE COURT: Can you tell me where things stand with the other defendants?

It seems like they were arrested, each in a different district I think. But any update on I guess when they're arrested, their bail status, and to the extent they're detained, any sense of when we should expect them here?

MR. SHAHABIAN: Yes, your Honor.

Starting with the last question, that's the most difficult to answer, because it's up to the Marshals Service, as the Court knows. All the defendants were arrested on November 16, the same day.

Defendant Habib was arrested in the Southern District of Florida and waived both the identity hearing and detention hearing. So he is detained pending the Marshals transferring him to this district.

The same is true with respect to defendant Cheema, who was arrested in the Central District of California. And I think, as the Court is aware, Mr. Cheema's counsel requested

the Court do what it can to speed up his transfer here, but that's up to the Marshals from this office's perspective.

Defendant Virk was arrested in the Eastern District of California. He had a hearing, an initial detention hearing I believe it was two days ago, waived the identity hearing. The magistrate judge in the Eastern District of California held over the detention hearing for further argument. So that's scheduled for a continuation on December 6 at 2:00 PM in California.

THE COURT: Mr. Shahabian, when you say the magistrate judge held it over, was there an argument or was it adjourned?

MR. SHAHABIAN: There was argument, your Honor. I'm happy to summarize.

So when Mr. Virk was arrested, he was arrested in connection with a ghost gun, an unregistered firearm. A subsequent search of his house revealed I believe two additional ghost guns in the room he was living, as well as I think $400,000 in cash. So the government sought detention on risk of flight and dangerousness.

The defendant is also not a U.S. citizen, and has every intent to flee. My understanding is the AUSA in the Eastern District of California proffered much of this evidence, including evidence linking the defendant to the charged conduct here, and I'm happy to give the Court more color on that as well.

The judge I think wanted -- was leaning towards detention, but wanted to know if the government would be willing to provide additional evidence to support the proffered statements about what was seized from Mr. Virk, or his apartment -- or his house, excuse me, upon his arrest, as well as some of the Signal chats that linked him to the conspiracy.

So the government's in the process of determining our position on that. We ordered the transcript, but this is what the AUSA out there told us is where things stand.

THE COURT: Do you have an idea what time on the 6th that hearing is scheduled for?

MR. SHAHABIAN: 2:00 PM Pacific.

THE COURT: So that would be 5:00 PM our time.

MR. SHAHABIAN: Correct, your Honor.

THE COURT: I think that covers my questions.

I take it there have been no issues with Mr. Burgos' compliance with his pretrial release?

MR. SHAHABIAN: Not that I'm aware of, your Honor.

MR. IANDOLO: Your Honor, two things. First, I think the government stated when they first started their rendition of the case, he said Burgos instead of Virk. I just want to clarify the record that all those statements pertain to another codefendant.

MR. SHAHABIAN: Yes, the ghost gun, the search was all defendant Virk.

MR. IANDOLO: I thought you said Burgos.

And as far as the conditions you just asked, there is no issue with the conditions. There was a blast last night, 1:30. He was home. He did contact him. But it is going off for some time, so I wanted to let the Court know there is an issue with the beacon, but he was at home.

THE COURT: You're discussing that with pretrial services?

MR. IANDOLO: Yes, your Honor.

THE COURT: So let me turn to the arraignment on I guess it's the S-2 indictment.

Mr. Iandolo, have you received a copy of indictment S-2 Crim 618 that charges your client?

MR. IANDOLO: Yes, your Honor. It was received on November 16 at the presentment.

THE COURT: Have you reviewed it with Mr. Burgos?

MR. IANDOLO: Yes, your Honor. It was reviewed.

THE COURT: Mr. Burgos; is that right? Have you reviewed the indictment charging you with your attorney?

THE DEFENDANT: We have spoke about it, yes.

THE COURT: You're charged in indictment no. S-2 Crim 618, and that charges you with participating in a conspiracy to distribute or possess with intent to distribute five kilograms or more of mixtures and substances containing a detectable amount of cocaine. That's in violation of Title 21 United

States Code Sections 846 and 841 (b)(1)(A). The indictment I believe also includes -- it does, it includes a forfeiture allegation.

I just summarized the indictment for you. Have you had a chance to read the indictment?

THE DEFENDANT: I haven't read it myself. No, I haven't seen it.

THE COURT: Have you seen the indictment?

THE DEFENDANT: No.

THE COURT: Okay. Mr. Iandolo, can you provide a copy of the indictment to Mr. Burgos?

MR. IANDOLO: Yes, I can provide it. I don't have a copy on me, but we went over sum and substance what it contained, your Honor.

THE COURT: Mr. Burgos, I also just summarized it for you. Do you wish me to read every word of it right now, or do you waive it's public reading?

THE DEFENDANT: I can waive the public reading. Thank you.

THE COURT: Mr. Iandolo, do you wish to enter a plea on behalf of your client?

MR. IANDOLO: Yes, your Honor. My client would enter a plea of not guilty to the counts at this time.

THE COURT: I will enter a plea of not guilty for Mr. Burgos.

Let me go back to the government. Since I only have the indictment here, can you give me a summary of the conduct that's being alleged in this case, as well as the materials the government expects to produce in discovery and the anticipated timing of that production?

MR. SHAHABIAN: Yes, your Honor. With the Court's indulgence, I have some notes on my phone.

THE COURT: Please. Go ahead.

MR. SHAHABIAN: So the charges in this case relate to the defendant's participation in a narcotics conspiracy. Specifically, the defendant was a member of a drug trafficking organization that was transporting hundreds of kilos of cocaine in tractor trailers across the country. Specifically, in March of this year, law enforcement seized over 400 kilograms of cocaine in three different shipments that were shipped through a warehouse in New Jersey.

The defendant and his co-conspirators coordinated the transportation and movement of those kilograms of cocaine through the warehouse, through a messaging app called Signal. The defendant was a member, as were his co-conspirators. They discussed transporting it, when law enforcement seized it. The defendant also had access to the warehouse.

As the Court knows, defendants were arrested all over the country in this case. Mr. Burgos is local, and had control or access to the warehouse.

The discovery in this case is going to consist primarily of the Signal chat messages, the group chats, recordings that the government has obtained, records from the seizures of the cocaine, including photographs, and laboratory reports, surveillance photographs, cell site data and toll records, evidence obtained from iCloud accounts and electronic devices of various co-defendants that were obtained pursuant to search warrants, business records obtained pursuant to grand jury subpoenas, and the warrants themselves.

The government would ask for a discovery deadline of four weeks after the defendant makes the request for Rule 16 discovery.

THE COURT: Mr. Iandolo, is there a request for discovery at this point?

MR. IANDOLO: Yes, your Honor.

At this time I'm going to make my request for Rule 16 discovery. I spoke to my client. We were going to opt another way, but we're going that way at this point.

THE COURT: Does four weeks for the production of that discovery work for you, Mr. Iandolo?

MR. IANDOLO: Yes, your Honor. That would put us in the first week of January, and I think that works.

THE COURT: Hopefully by then one or more of the other defendants will have arrived, but, as Mr. Shahabian noted, there are a lot of moving parts with that, with the Marshals.

While we're on the topic of the government's disclosure obligations, let me put one other thing on the record I always do. In late 2020, the Due Process Protections Act went into law. That statute has provisions that amend Rule 5 of the Federal Rule of Criminal Procedures, such as Rule 5(f) now requires me to remind the parties of the prosecutor's obligations under the Supreme Court decision in *Brady v. Maryland*.

Pursuant to that statute and Rule 5(f), I direct the prosecution to comply with its obligations under *Brady v. Maryland* and its progeny to disclose to defense all information, whether admissible or not, that is favorable to the defendant, material to either guilt or to punishment, and known to the prosecution.

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorney or attorneys responsible. And, as I usually do, after this proceeding, I will enter on the docket a written order that more fully describes its obligation and the possible consequences of failing to meet it.

Mr. Shahabian, I direct the prosecution to review and comply with this order, but for purposes of today, do you confirm that the prosecution -- that you understand your obligations and will fulfill them?

MR. SHAHABIAN: Yes, your Honor.

THE COURT: Mr. Iandolo, if production of discovery is about four weeks from now, which will bring us to the very end of December, early January, any thoughts on when it would make sense to come back for another conference?

MR. IANDOLO: Your Honor, I'm okay with if the Court wants to -- you know, I need about two, three weeks to go through it, depending on the size of it. But I would say two to three weeks would be fair to at least get an understanding of what's there.

So the end of January I think would be fair.

THE COURT: Mr. Shahabian, does that make sense to the government as well?

MR. SHAHABIAN: Yes, your Honor.

THE COURT: How is the morning of Wednesday January 25?

MR. SHAHABIAN: It's fine for the government, your Honor.

MR. IANDOLO: That works for me, your Honor.

THE COURT: Wednesday, January 25, at 10:00 AM.

At that conference, Mr. Iandolo, I'll check in with you as to your status of review of the discovery with Mr. Burgos and whether you have a sense if you anticipate filing any motions on behalf of your client. If there are motions or if there may be motions, I likely will set a

deadline for those motions and possibly any hearing that we may need. If not, we'll see where things are in the case and possibly set a trial date.

If a disposition is reached before January 25th, please just reach out to Ms. Henrich and we'll schedule promptly any appropriate proceeding.

Mr. Burgos, before we wrap up, I want to note one thing for you, which I always advise criminal defendants their first appearance before me. It is nothing specific to you and certainly nothing specific to your attorney, but if circumstances arise that you want or need to change counsel, you may want to retain another counsel or maybe you're no longer able to afford counsel and need counsel appointed, it's critical that you raise that as soon as possible. A lawyer needs adequate time to review discovery.

Mr. Shahabian explained what the government's discovery likely will be in this case. It sounds like it will be a decent amount for any attorney to review. And when I set a trial date, it's unlikely to change. So that's a long way of saying that if you have an application to change counsel, it's important to do it as early as possible so I can consider that application and decide whether to grant it. If we do it just before the trial date, I may not grant that application or you may be left with a situation of proceeding with your existing counsel or without counsel.

So, again, that's something I tell all criminal defendants the first time they're before me.

Are there any other matters we should address this morning?

MR. SHAHABIAN: Just the exclusion of time, your Honor, but that's from the government's perspective.

MR. IANDOLO: Nothing from us, your Honor.

THE COURT: Why don't you state the basis for exclusion.

MR. SHAHABIAN: Yes, your Honor.

The government moves to exclude time from now until the conference on January 25. The exclusion is in the interest of justice, so the government has time to prepare and produce discovery; so that the defendant has time to review the discovery; and so the parties can discuss any potential pretrial dispositions.

THE COURT: Mr. Iandolo.

MR. IANDOLO: That's a fair statement, and we have no objection.

THE COURT: I will exclude time from today until January 25, 2023, pursuant to Title 18, U.S. Code Section 3151(h)(7)(A). I find that the ends of justice served by excluding such time outweigh the interests of the public and defendant in a speedy trial; and also for the reasons Mr. Shahabian stated. Specifically, that allow for the government

to compile and produce discovery to the defense, to allow the defendant to review that discovery, and for the parties to discuss a possible disposition of this case.

I think that covers everything. Thank you for getting in here early this morning. I have a trial that's going on, which is why I wanted to have this at 9:00 a.m.

I hope everyone stays well and has a good holiday season.

(Adjourned)