**JAMES R. FROCCARO, JR.**
**Attorney at Law**
**20 Vanderventer Avenue, Suite 103W**
**Port Washington, NY 11050**
**telephone: (516) 944-5062**
**fax: (516) 944-5066**
**email: JRFESQ61@aol.com**

July 10, 2023

BY ECF
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Christopher Burgos
22 Cr 618 (JPC)

Dear Judge Cronan:

I have reviewed the Government's letter motion to Your Honor dated July 7, 2023, seeking draconian relief, namely, that Mr. Burgos be deprived of his liberty and detained pending trial. For the reasons set forth below, the government's motion should be denied.

By way of background, Mr. Burgos was ordered released in this matter with restrictive conditions, including location monitoring and a curfew, by Magistrate Willis on November 16, 2022. On February 14, 2023, Your Honor removed the condition of a curfew enforced by location monitoring on the application of Pretrial Services and without objection by the government. Significantly, over the course of the past near eight months, Mr. Burgos has complied with all of the conditions of his release, including reporting as directed and maintaining gainful employment.
On June 21, 2023, however, Mr. Burgos was arrested by the NYPD and charged with an A and B misdemeanor as well as a violation (not a crime) -

none of which related to his Ex-Girlfriend - only her visitor from California that evening who alleged that he was menaced by Mr. Burgos with a large steak knife in the Ex-Girlfriend's home in Brooklyn, forcing him to leave the premises.[1]

Thankfully, Your Honor provided me with the time necessary to effectively respond to the Government's July 7 letter. I spent my weekend listening - very carefully - to all of the body camera recordings of the NYPD Officers involved in the arrest. My review revealed that the Government has played fast and loose with the "facts" related to Mr. Burgos' misdemeanor arrest.

The "indisputable" evidence is that Mr. Burgos had been calling his Ex-Girlfriend in the evening of June 21st to see if her mother was okay - because her mother had been in the hospital after a stroke. His Ex-Girlfriend was not answering her telephone, however, because unbeknownst to Mr. Burgos at the time - she was engaged in a live-stream performance with her Visitor from California (whom she apparently met in-person for the very first time that evening). Mr. Burgos who had parted on very good terms from his Ex-Girlfriend - was concerned that he was unable to reach her that evening - so he decided to travel to her home in Brooklyn to make sure that nothing was wrong. When he ultimately learned of this man's presence in her home that evening - he argued with his Ex-Girlfriend about it - which - while not advisable under the circumstances - is simply not a crime.

When the police arrived on the scene the night of Mr. Burgos' arrest on June 21st - Officer-2 explained to the Ex-girlfriend that the police had received a 911 call about an assault having occurred at her home that evening. The Ex-Girlfriend told Officer-2 that this information was not accurate - that "no one got touched" - neither her nor her Visitor from

---

[1] To avoid any confusion, I will use the same references to the individuals involved as contained within the government's July 7 letter to Your Honor, i.e., "Ex-Girlfriend", "Officer-1," etc. All except "Victim-1," whom I will refer to hereinafter as the "Visitor."

California.[2] See Government's Exhibit 3 at 6:55.

Significantly, in response to Officer-2's question as to whether Mr. Burgos had ever displayed or threatened her Visitor with a knife - the Ex-Girlfriend repeatedly answered "No." See Exhibit 3 at 5:40-5:55. Officer-2 then repeated essentially the same question to the Ex-Girlfriend at 8:36-9:00 of the recording. Officer-2 asked "between him and him and the other guy was there like any knife displayed" and the Ex-Girlfriend answered"no, no, I was in the middle of them - they were yelling at each other. I don't think he [Mr. Burgos] did."

The Government repeatedly argued to Your Honor in its July 7 letter, however, that a primary reason for Mr. Burgos' detention is that:

> "[t]he Ex-Girlfriend initially said that she did not think the defendant pulled out a knife. But, she backtracked when it was just her and Officer-2, and effectively admitted that Burgos had a knife to Officer-2 when she asked what happens when "someone takes a knife out and out and puts the knife back."

See Government's letter at pages 4 and 5. Nothing, however, could be further from the truth. The government did not provide Your Honor with the entire passage, nor place it in the proper context. What the Ex-Girlfriend actually said was "**I feel like** - you think someone takes a knife out and puts the knife back. You know what I mean, you know what I'm saying." See Government's Exhibit 3 at 11:00. The Ex-Girlfriend was not posing a question to Officer-2 here. What the Ex-Girlfriend was clearly saying to Officer-2 was that the Visitor's allegation of a knife having been displayed made no

---

[2] The Government's decision to include allegations (complaints) purportedly made against Mr. Burgos by prior girlfriends on pages 6-7 of its July 7 letter to Your Honor with the proviso that "the Government does not currently know the circumstances of the resolution of those complaints" is disingenuous on a number of levels. These matters were ordered sealed by the court. The Government knows that this means that these complaints/allegations were dismissed and never proven and, thus, have no evidentiary value or place in the government's detention memo in the first place. Other than, of course, to try and unfairly prejudice Mr. Burgos here.

sense at all.

Notably, the Government also neglected to include in its letter to Your Honor the following recorded exchange that took place between Officer-1 and the Ex-Girlfriend when she learned that the police were intending to arrest Mr. Burgos:

> Ex-Girlfriend: I'm confused as to why they're trying to arrest him though.
>
> Officer-1: Um - so basically he's saying he was threatened with a knife. So by law we have to - if someone says he's threatened.
>
> Ex-Girlfriend: Yeah - but how do you know it's the truth. That's what I'm saying. Anybody can say anything.

See Government's Exhibit 2 at 20:35. Clearly, what the Ex-Girlfriend is saying during this exchange is that she is confused as to how Mr. Burgos could possibly be arrested for a crime he did not commit - that he did not threaten anyone with a knife. There is no other plausible interpretation for this passage from the Ex-Girlfriend as well.

Aside from the Ex-Girlfriend's recorded accounts which clearly tend to exonerate Mr. Burgos of any criminality - the Visitor's accounts to the police also had significant holes in it. In the first instance, the Visitor claimed that Mr. Burgos displayed a large kitchen knife to him - but no knife was ever found in the Ex-Girlfriend's home to corroborate this claim.[3] Secondly, when approached by the police and asked for his story

[3] In one of a number of different versions that he provided to the police, the Visitor from California claimed that Mr. Burgos pulled out a large steak knife and was "just kinda like coming at - I assume it would have been me - but she (the Ex-Girlfriend) was in the way and so I evacuated from the situation." His version of why he left was also contradicted by the Ex-Girlfriend who told the police that when she and Mr. Burgos began to argue about the Visitor's presence - she had simply asked the Visitor to please leave her home and he did.

about what had occurred, the Visitor claimed that he and the Ex-Girlfriend had heard Mr. Burgos knocking at the door and that she had panicked and refused to open the door for him. The Visitor then told the police that Mr. Burgos had "jimmied" the lock on the door in order to get into his Ex-Girlfriend's home that evening - that the Ex-Girlfriend had not let him on. See Government's Exhibit 2 at 16:40-17:15. The Ex-Girlfriend told the police the truth, however, that she ultimately opened the door and let Mr. Burgos into her home. Clearly, the fact that the Visitor falsely claimed to the police that Mr. Burgos had committed a felony, namely, breaking and entering, in order to gain access to his Ex-Girlfriend's home should have raised an alarm in someone's brain. But, unfortunately, it did not.

The Government's claim that Mr. Burgos should be remanded because he also "appears to have lied to his Pretrial Services Officer by characterizing the dispute as a "verbal dispute" and "denying that he had a knife" (see Government's July 7 letter at page 7) is, quite frankly, absurd. Mr. Burgos immediately notified his assigned Pretrial Services Officer of his arrest upon his release from custody and he has at all times maintained his innocence to these charges and asserted that he committed no crime whatsoever. The government is, in essence, asking that Mr. Burgos be detained for asserting his innocence - a novel theory indeed.

For Your Honor's information, Mr. Burgos was released on his own recognizance by the court in connection with his misdemeanor case and his next scheduled court appearance in the Kings County Criminal Court is August 11, 2023. The reality is that any prosecutor worth his weight would not proceed with this misdemeanor case based upon the evidence presented - and I am confident that it will ultimately be disposed of with no finding of criminality on Mr. Burgos' part.

In sum, I am most respectfully joining in the recommendation of Pretrial Services that no action be taken against Mr. Burgos at this time and that he continue to report to Pretrial as directed and be gainfully employed.

Respectfully submitted,

/JRF/

James R. Froccaro, Jr.

JRF:pa