UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 22 Cr. 618 (JPC)

MICHAEL GIAN WILLIAM HABIB,

Defendant. Plea

------------------------------x CORRECTED

New York, N.Y.
December 20, 2023
3:25 p.m.

Before:

HON. JOHN P. CRONAN,

District Judge

APPEARANCES

DAMIAN WILLIAMS,
United States Attorney for the
Southern District of New York
MATTHEW R. SHAHABIAN
THOMAS S. BURNETT
Assistant United States Attorneys

PHILIP L. REIZENSTEIN
Attorney for Defendant

(Case called)

THE DEPUTY CLERK: Can counsel, starting with the government, please state your name for the record.

MR. SHAHABIAN: Good afternoon, your Honor.

Matt Shahabian, appearing for the government, along with Thomas Burnett.

THE COURT: Good afternoon, Mr. Shahabian and Mr. Burnett.

MR. REIZENSTEIN: Good afternoon.

Philip Reizenstein, present in court with the defendant, Michael Habib.

THE COURT: Good afternoon, Mr. Reizenstein, Mr. Habib.

THE DEFENDANT: Good afternoon.

THE COURT: So Mr. Reizenstein, I understand that you have an application today on behalf of your client?

MR. REIZENSTEIN: Yes, sir. It would be to change his previously entered plea of not guilty to a plea of guilty as per the agreement that we have signed with the government.

THE COURT: Thank you.

And Mr. Habib, is that right? You wish to enter a plea of guilty today to Count One of indictment, I believe, S3, to conspiring to distribute five kilograms and more of cocaine?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to now ask you questions so I

can ensure that you wish to plead guilty because you are guilty and not for some other reason. The purpose of these questions is also to establish that you know what rights you would be giving up by pleading guilty.

If you do not understand any of my questions or if you wish to consult with Mr. Reizenstein at any point for any reason, just let me know and I'll arrange for the two of you to have as much time as you need to speak privately. It is important that you not hesitate to do that because it is essential that you understand all of my questions before you answer them.

The first thing I will ask Mr. Habib is for you to stand and for Ms. Henrich to put you under oath.

(Defendant sworn)

THE COURT: Mr. Habib, you are now under oath. What that means is that if you answer any of my questions falsely, you may be prosecuted for the separate crime of perjury; and any false answers that you give under oath could be used against you in such a prosecution. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: First, I'm going to ask you some questions about yourself. And I think maybe, can we move the microphone a little bit closer to Mr. Habib. Thank you.

What is your full name?

THE DEFENDANT: Michael Gian William Habib.

THE COURT: How old are you, Mr. Habib?

THE DEFENDANT: Thirty-seven years old.

THE COURT: How far did you go in school?

THE DEFENDANT: I have my high school. I did one year of college.

THE COURT: What did you study for that year in college?

THE DEFENDANT: Business administration.

THE COURT: What jobs have you held in the past five years?

THE DEFENDANT: I've owned and helped manage a roofing company. I've owned and helped set up e-commerce business -- businesses. I've also had solar companies internationally. And I have a humanitarian company that I'm operating in Africa.

THE COURT: And what type of humanitarian company is that?

THE DEFENDANT: We dig wells for, like, villages, remote villages and areas, and donate food and clothes and stuff.

THE COURT: Mr. Habib, have you ever been treated or hospitalized for any type of mental illness?

THE DEFENDANT: No, sir.

THE COURT: Are you now or have you recently been under the care of any doctor or psychiatrist?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been treated or hospitalized for any type of addiction, like drug addiction or alcohol addiction?

THE DEFENDANT: No.

THE COURT: Have you taken any medicine or pills in the past 48 hours?

THE DEFENDANT: No, sir.

THE COURT: Have you consumed any alcohol or taken any drugs in the past 48 hours?

THE DEFENDANT: No, sir.

THE COURT: Are you feeling well physically today?

THE DEFENDANT: Yes, sir.

THE COURT: Does your mind feel clear?

THE DEFENDANT: Yes.

THE COURT: And do you understand what is happening at today's proceeding?

THE DEFENDANT: I do.

THE COURT: And Mr. Reizenstein, have you discussed this matter with Mr. Habib?

MR. REIZENSTEIN: I have. As recently as yesterday, we met at MDC. And then, having received the formal agreement, I was able to meet with him today at 2 o'clock and read it to him line by line.

THE COURT: And do you think he is capable of understanding the nature of today's proceeding?

MR. REIZENSTEIN: I do. And may I ask for a moment, Judge?

THE COURT: Of course.

(Counsel conferred with defendant)

MR. REIZENSTEIN: We're ready to proceed and I do believe him competent to proceed.

THE COURT: And to that end, do you think he understands the rights that he will be waiving if he does plead guilty today?

MR. REIZENSTEIN: Yes, I do.

THE COURT: Does either counsel have any doubts about Mr. Habib's competence to plead guilty at this time?

MR. SHAHABIAN: No, your Honor.

MR. REIZENSTEIN: None from the defense.

THE COURT: On the basis of Mr. Habib's responses to my questions, my observations of his demeanor here in court, and the representations of counsel, I find that he is fully competent to enter an informed plea of guilty at this time.

Mr. Habib, now I will ask you those questions to help ensure myself that you understand what you are doing by pleading guilty, and that you wish to plead guilty because you are, in fact, guilty. This will tell me explaining certain constitutional rights that you have. These are rights that you will be giving up if you entered a guilty plea, so it is important that you know and understand these rights.

And again, please listen carefully to what I'm about to say; and if you don't understand something, just stop me, and either I or your attorney will explain the matter more fully to you.

Under the Constitution and laws of the United States, you have the right to plead not guilty to the charge in the indictment. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you did plead not guilty, you would be entitled to a speedy and public trial by a jury on the charge in the indictment. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At a trial, you would be presumed to be innocent and the government would be required to prove your guilt by competent evidence beyond a reasonable doubt before you could be found guilty. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: A jury of 12 people would have to agree unanimously that you were guilty, and you would not have to prove that you were innocent if you went to trial.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At that trial and at every stage of your case, you would be entitled to be represented by an attorney. And if you cannot afford a lawyer, one would be appointed at

public expense — meaning free of cost — to represent you.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: During a trial, the witnesses for the government would have to come to court and testify in your presence. Your lawyer could cross-examine the witnesses for the government, object to evidence offered by the government and offer evidence on your own behalf if you so desired. And you would have the right to have subpoenas issued or other process used to compel witnesses to testify in your defense.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At a trial, although you would have the right to testify, if you chose to do so, you would also have the right not to testify. And if you decided not to testify, no one, including the jury, could draw any inference or suggestion of guilt from the fact that you did not testify.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Have you had the opportunity -- have you had a full opportunity to discuss with your lawyer whether there is a basis to seek suppression of some or all of the evidence that the government has against you on the ground that your constitutional rights were violated?

THE DEFENDANT: I do.

THE COURT: And you've been able to discuss that with your attorney?

THE DEFENDANT: Yes.

THE COURT: And do you understand that by pleading guilty, you will be giving up your right to seek suppression of any evidence that the government has against you?

THE DEFENDANT: Yes, I do.

THE COURT: Now, if you were convicted after a trial, you would have the right to appeal that verdict.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And even now as you're entering this guilty plea, you have the right to change your mind and continue to plead not guilty and go to trial on the charge in the indictment. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you plead guilty and I accept your guilty plea, you will have to give up your right to a trial and the other rights I have just discussed, other than the right to an attorney, which you will have regardless of whether or not you plead guilty. There will be no trial. I'll enter a judgment of guilty. And at a later date, I will sentence you on the basis of your guilty plea after I've considered and reviewed a presentence report from the probation department and any submissions from your lawyer and from the government's

lawyer. There will be no appeal with respect to whether the government could use the evidence it has against you or with respect to whether you did or did not commit this crime.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you plead guilty, you also have to give up your right not to incriminate yourself. That is because I will soon ask you questions about what you did in order to satisfy myself that you are, in fact, guilty as charged. That means that you will have to admit and acknowledge your guilt.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions for me about any of those rights?

THE DEFENDANT: No, sir.

THE COURT: Are you willing to give up your right to a trial and the other rights I have just discussed?

THE DEFENDANT: Yes, I am.

THE COURT: Now, I've received, Mr. Habib, from the attorneys what appears to be a signed plea agreement. It is dated December 19th, 2023; I will mark it as Court Exhibit 1. And I am holding it up now.

On the last page there appears to be a signature above your name. Did you sign this plea agreement?

THE DEFENDANT: Yes, I did.

THE COURT: Did you read the plea agreement before you signed it?

THE DEFENDANT: I did.

THE COURT: Did you also discuss it with your lawyer before you signed it?

THE DEFENDANT: Yes, sir, I did.

THE COURT: And Mr. Reizenstein, I know you mentioned this a few moments ago, but just to be clear, did you discuss this plea agreement with Mr. Habib?

MR. REIZENSTEIN: Yes, I did.

THE COURT: And Mr. Habib, did you fully understand this plea agreement before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Now, under this plea agreement, you will be pleading guilty to Count One of the indictment, which, as I mentioned earlier, charges you with conspiring to distribute and to possess with the intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Shahabian, will you please state the elements of that offense.

MR. SHAHABIAN: Yes, your Honor.

There are two elements to the offense.

First, that a conspiracy existed to distribute or possess with intent to distribute five kilograms and more of mixtures and substances containing cocaine.

The second element is that the defendant knowingly and willfully became a member of the conspiracy.

THE COURT: Thank you.

Mr. Habib, do you understand that if you were to go to trial, the government would have to prove those elements beyond a reasonable doubt?

THE DEFENDANT: Yes, I do.

THE COURT: And you also understand that if you were to go to trial, the government would have to establish venue for this offense in this district, which it would have to prove by a lower standard that's called a preponderance of the evidence?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm going to tell you about the maximum possible penalties for this crime. The "maximum" means just that, it means the most that could possibly be imposed. It does not mean that is what you necessarily will receive at sentencing; but you have to understand that by pleading guilty, you're exposing yourself to the possibility of receiving any combination of punishments up to the maximums that I'm going to describe. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I will start with the possible restrictions on your liberty.

The offense charged in Count One has a mandatory minimum sentence of ten years in prison and a maximum sentence of life imprisonment. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, your term of imprisonment will be followed by a term of supervised release. "Supervised release" means that you will be subject to the supervision of the probation department. There will be rules of supervised release that you would have to follow. If you violate those rules, you could be returned to prison without a jury trial to serve additional time and with no credit for time you served in prison as a result of your sentence and no credit for any time spent on post-release supervision.

Count One carries a mandatory minimum term of supervised release of five years and a maximum term of supervised release of life. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Habib, you also should understand that there is no parole in the federal system; and if you are sentenced to prison, you will not be released early on parole. There is a limited opportunity to earn credit for good behavior, but you would have to serve at least 85 percent of

the time you're sentenced to. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, in addition to these restrictions on your liberty, the maximum possible punishment also includes certain financial penalties.

The maximum allowable fine for Count One is the greatest of $10 million or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And there is no restitution in this case; is that right?

MR. SHAHABIAN: That's correct, your Honor.

THE COURT: In addition, Mr. Habib, I can order you to forfeit all property derived from the offense or used to facilitate the offense. Pursuant to your plea agreement, you are admitting to the forfeiture allegation with respect to Count One in the indictment; and you agree to forfeit to the United States pursuant to Title 21, United States Code, Section 853, a sum of money equal to $487,900, and all right, title, and interest that you have in four specific properties.

First, $8,000 in U.S. currency that was seized from your co-defendant, Bhupinder Singh Virk's vehicle at the time of his arrest on November 16, 2022.

Second, $479,900 in U.S. currency that was seized from

Mr. Virk's residence in Fresno, California.

Third, a Louis Vuitton bag seized on November 16, 2022 from Mr. Virk's vehicle at the time of his arrest.

And fourth, a 2020 Mercedes-Benz AMG GT63, with vehicle identification number WDD7X8JB5LA014070. That Mercedes-Benz was seized on November 16, 2022 at the time of Mr. Virk's arrest as well.

Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: And in your plea agreement you also agree that you will not file a claim or petition for remission or mitigation in any forfeiture proceeding involving those four specific properties, and you will not cause or assist anyone else in doing so. You also agree to take all necessary steps to pass clear title to that property to the United States, including by exercising all necessary documentation.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I've also received a document titled "Consent Preliminary Order of Forfeiture" as to specific property/money judgment. This also appears to be signed or has a signature over your name. Did you sign this as well?

THE DEFENDANT: Yes, sir.

THE COURT: Yes?

THE DEFENDANT: Yes, sir, I did.

THE COURT: Did you read the document before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you also discuss it with your attorney?

THE DEFENDANT: I did.

THE COURT: Mr. Reizenstein, is that right? Did you review the consent preliminary order of forfeiture with your client?

MR. REIZENSTEIN: Yes, I had received it yesterday and reviewed it with him before court today.

THE COURT: Thank you.

And Mr. Habib, did you understand this document before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Now, do you understand that pursuant to this order and very similar to your plea agreement, you're agreeing that a money judgment in the amount of $487,900 in U.S. currency will be entered against you, and that represents the amount of proceeds traceable to the offense in Count One of the indictment that you personally obtained.

Do you understand that?

THE DEFENDANT: I personally obtained?

THE COURT: Or that's, I believe, the language in the forfeiture here. With respect -- so Mr. Reizenstein, on page

3, No. 1, it refers to personally obtain.

MR. SHAHABIAN: Can we have a moment, your Honor?

THE COURT: You may.

(Counsel conferred)

MR. SHAHABIAN: Your Honor, the parties want to just discuss the language of the consent preliminary order of forfeiture. The purpose is just to give up any rights in the property seized from Virk, but we want to avoid any *Honeycutt* problems. So I think we'd ask that the Court defer actually entering this at this time.

THE COURT: And it's not necessary for me to enter this today.

So Mr. Habib, as the government's attorney just explained, the prosecutor and your attorney will discuss this order some more. It is not necessary for us to really go further into detail with this today for purposes of your guilty plea, but I expect I'll likely receive something from the parties in the near future, but certainly before sentencing, assuming your guilty plea goes forward today.

Let me also ask you though, Mr. Habib, do you understand that any forfeiture that I order of your assets will not be treated as satisfying any fine, restitution, or cost of imprisonment or any other financial penalty that I may impose?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Habib, I also must order a mandatory special assessment of $100. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Do you have any questions about any of these penalties for me?

THE DEFENDANT: No, sir.

THE COURT: Are you a U.S. citizen?

THE DEFENDANT: No.

THE COURT: Do you understand, Mr. Habib, that as a result of your guilty plea, there may be adverse effects on your immigration status?

THE DEFENDANT: I do.

THE COURT: And do you also understand that those adverse effects could include further detention after completion of your sentence and removal or deportation from the United States?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed those possible immigration consequences with your attorney?

THE DEFENDANT: Yes, yes, your Honor.

THE COURT: Do you also understand, Mr. Habib, that as a result of your guilty plea, you may lose certain valuable civil rights, to the extent that you have them or could otherwise obtain them, such as the right to vote, the right to hold any public -- the right to hold public office, the right

to serve on a jury, and the right to possess any kind of firearm? Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Are you currently serving any other state or federal sentence?

THE DEFENDANT: No, sir.

THE COURT: To your knowledge, are you being prosecuted in state court or federal court for any other crime?

THE DEFENDANT: No, sir.

THE COURT: Do you understand, Mr. Habib, that if your lawyer or anyone else attempted to predict what your sentence will be, their prediction could be wrong?

THE DEFENDANT: Yes, I do.

THE COURT: And let me tell you why that is. Your lawyer, the government's lawyer, no one is able to assure you what your sentence will be because I will be deciding your sentence and I won't do that today. As I mentioned, I will wait until I receive a presentence report from the probation department, any submissions from your lawyer and the government's lawyer. I will do my own calculation of the U.S. sentencing guidelines range for you. And then I will consider all the factors I have to consider under the law in arriving at the appropriate sentence for you. Do you understand that?

THE DEFENDANT: Yes, sir, I do. Thank you.

THE COURT: And have you discussed these issues with

your lawyer?

THE DEFENDANT: Yes, I have.

THE COURT: And even if your sentence ends up being different from what your lawyer or anyone else has told you it might be, and even if it is different from what you expect, you'll still be bound by your guilty plea and will not be allowed to withdraw your guilty plea. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: So Mr. Habib, let me go back to the plea agreement again.

Your plea agreement contains a discussion of how the U.S. Sentencing Guidelines would apply in your case. In it, you and the government agree that the base offense level for your crime in Count One is 36. That is because the offense included at least 150 kilograms, but less than 450 kilograms, of cocaine. And pursuant to Section 2D1.1(a)(5) and (c)(2), that has a base offense level of 36.

In addition, your plea agreement provides that your offense is increased by two levels because you made a credible threat to use violence and/or directed the use of violence in connection with the offense, pursuant to Section 2D1.1(b)(2).

Do you understand that, Mr. Habib?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Shahabian, I assume because that enhancement applies, Mr. Habib is not eligible for the zero

point offender reduction?

MR. SHAHABIAN: That's correct, your Honor.

THE COURT: And Mr. Habib, do you understand that under the plea agreement, you and the government also agree that you would receive a three-level reduction for acceptance of responsibility pursuant to Section 3E1.1 because of your timely notice and intent to plead guilty?

THE DEFENDANT: Yes, I do.

THE COURT: Now, that gives you a final offense level of 35. You have no criminal history points, so you're in Criminal History Category I, which means that you have stipulated that your sentencing guidelines range would be 168 to 210 months in prison, and a fine range — depending on your ability to pay — of 40,000 to $10 million.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, Mr. Habib, as I mentioned, in this plea agreement you have the stipulation to a guidelines range of 168 months to 210 months. That agreement is binding on you and it is binding on the government. It is not binding on me. As the judge in this case, I have my own obligation to calculate the correct sentencing guidelines range for you and also to determine what the appropriate sentence should be for you. I am not saying I will come up with a guidelines calculation that is different from what is contained in the

plea agreement, but if I do, I will not let you withdraw your guilty plea, even if the range I determine is higher than the one you agreed to with the government. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, in addition, even if I agree with the guidelines range in the plea agreement, that range is not mandatory; it is advisory. I may sentence you to less than 168 months — although I cannot sentence you to less than 120 months — or I may sentence you to more than 210 months in prison. I will arrive at that sentence only after considering the presentence report that I mentioned, the submissions from your attorney and the government's attorney, and evaluate all the relevant factors under federal law. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: You also understand that in your -- do you also understand that in your plea agreement, you waived -- you are waiving the right to appeal or otherwise challenge any sentence that entails a term of imprisonment that is 210 months or less, and that includes bringing a collateral challenge, including a *habeas* petition to challenge your sentence.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So just to say that differently, if I sentence you to 210 months in prison or anything less than 210 months in prison, you would have no right to appeal or

otherwise challenge your sentence. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, in your plea agreement, you also agree that you do not meet the criteria for what is called safety valve relief under Title 18, United States Code, Section 3553(f). That relief otherwise might potentially allow you to be eligible for a sentence below the mandatory minimum 120 months. But you are agreeing that you are not eligible for that relief. Do you understand that?

THE DEFENDANT: I do.

THE COURT: And do you understand that if at sentencing you were to seek safety valve relief, that would be a material breach of your plea agreement?

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Now, as part of your plea agreement you also have agreed not to appeal or otherwise challenge any term of supervised release that is less than or equal to the maximum term of supervised release which, as I mentioned, is lifetime supervised release. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also have agreed not to appeal or challenge any forfeiture amount that is less than or equal to $487,900. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And you've agreed not to appeal or challenge any fine that is less than or equal to $10 million.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you have agreed not to appeal or challenge any special assessment that is less than or equal to $100. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And again, have you discussed all these issues with your attorney?

THE DEFENDANT: Yes, I have.

THE COURT: And Mr. Habib, does this written plea agreement constitute your complete and total understanding of the agreement that you have with the government?

THE DEFENDANT: Yes.

THE COURT: Has anything been left out of this plea agreement?

THE DEFENDANT: No, sir.

THE COURT: And other than what is written in this plea agreement, has anyone made any promise to you or offered you any inducement to get you to plead guilty or sign the agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you or forced you to plead guilty or sign the agreement?

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Are you satisfied with your attorney's representation of you in this case?

THE DEFENDANT: Yes, I am.

THE COURT: So Mr. Habib, at this point, as I mentioned earlier, I'm going to ask you to tell me in your own words what you did that makes you believe you're guilty of the offense charged in Count One of the indictment.

THE DEFENDANT: So in 2021, at the beginning, I introduced the confidential informant to one of my friends that I knew that was bringing marijuana to New York. And in the early part of 2022, he approached me asking to make more money to transport throughout the United States. And I connected him with somebody that was doing transportation.

And after the first shipment that he got involved with went missing in Kansas City, he was held responsible for it, or they were pointing the finger at him. So I kind of was sticking -- I was sticking up for him. And I advised him basically, like, You got to make it right. Like, talk to the people you are on the same contact with them. And that's when he arranged this second shipment of drugs that came involved in it.

THE COURT: When you're saying "he," are you referring to the person who you believe --

THE DEFENDANT: The confidential informant; correct.

THE COURT: And then there was a second shipment. Can you say some more about that.

THE DEFENDANT: Well, there was -- one, there was the end of February. I got, I think, busted on that sometime in March, beginning of March. And then he had arranged to, I guess, work the payment off, and that was the other shipments, the four shipments that came in March from the, I think -- I don't know what the dates were exactly.

THE COURT: And where were the shipments coming from, where were they going to?

THE DEFENDANT: I believe from California.

THE COURT: And do you know where they were to arrive?

THE DEFENDANT: New Jersey warehouse.

THE COURT: Do you know what was in those shipments?

THE DEFENDANT: I knew after the fact of the first one what was, like, happening, do you know what I mean? But I didn't know that he was more or less going to keep continuing to do that. I just told him basically, like, make it right, whether you got to make payments or work it off. He was essentially going to be selling his company to pay off the thing; but because I was the one that introduced him to the people, that, I guess, involves me in the conspiracy.

THE COURT: Did you know that the shipment involved illegal narcotics?

THE DEFENDANT: I did.

THE COURT: You did?

Did you know that the shipment involved cocaine?

THE DEFENDANT: Yeah. Yes, sir.

THE COURT: Did you know that the shipment involved more than five kilograms of cocaine?

THE DEFENDANT: Yes, I did.

THE COURT: Let me first ask, Mr. Shahabian, if the government would like to make a proffer as to venue.

MR. SHAHABIAN: Yes, your Honor.

Had the case gone to trial, the government would have introduced evidence showing that members of the conspiracy traveled through the Southern District of New York to reach the warehouse in New Jersey that the narcotics were shipped through, as well as recordings made of telephone conversations where one participant was in the Southern District of New York at the time.

THE COURT: And Mr. Habib, did you hear what the government's attorney just said about activities occurring in the Southern District of New York?

THE DEFENDANT: People were traveling through New York.

THE COURT: Do you mind --

(Indiscernible crosstalk)

THE DEFENDANT: Sorry.

MR. SHAHABIAN: Yes. That people were traveling through New York to reach the warehouse in New Jersey. So starting in, I believe, Long Island, I think in Brooklyn, and then through Manhattan or the waters surrounding New York City, which necessarily crosses into this district to reach New Jersey.

THE COURT: And when you say "people," what were their involvements?

MR. SHAHABIAN: One was a co-conspirator, Christopher Burgos, who was responsible in part for control of the warehouse in New Jersey that was used to offload the shipments of cocaine.

THE COURT: So Mr. Habib, the government is making the representation that the evidence would show that people involved in this conspiracy took actions in furtherance of the conspiracy in the Southern District of New York even if not necessarily that was you. Do you have any objection to the government's representation of that evidence?

THE DEFENDANT: No, sir.

THE COURT: And Mr. Reizenstein, is that the same?

MR. REIZENSTEIN: Yes. We looked into this closely, and we're aware of the traveling through, as well as conversations and additional meetings to establish jurisdiction

and venue.

THE COURT: So there's no challenge to venue?

MR. REIZENSTEIN: No, sir.

THE COURT: And Mr. Habib, can you tell me a little bit more about what you did to help coordinate the shipments, what your role was?

MR. REIZENSTEIN: Could we have a moment, Judge?

THE COURT: You may.

(Counsel conferred with defendant)

THE DEFENDANT: So initially after the first shipment or the shipment of drugs that was seized in Kansas City, after I made the introduction, I had encouraged the informant to basically pay the money back. Because at the time that it happened, nobody knew that -- that, like, he wasn't aware -- nobody was aware of the people in Kansas City were actually pulled over. So he was suspected of running off with the drugs or his people running off with the drugs. So I had encouraged him to, you know, make it right and basically take care of the people, pay them back, whether he had to sell his company or whatever he was doing, which led to the second shipment of cocaine. It was -- or of drugs that were seized.

THE COURT: And for that second shipment of cocaine, did you help arrange the shipment?

MR. REIZENSTEIN: One moment please.

(Counsel conferred with defendant)

THE DEFENDANT: So I didn't really arrange it, but I encouraged the confidential informant to more or less pay his bill that he had, he was responsible for. And that's what led to the second shipment that turned out to be the cocaine.

THE COURT: Mr. Shahabian, are there additional questions you propose that I ask?

MR. SHAHABIAN: No, your Honor.

MR. REIZENSTEIN: Judge, could I address something?

THE COURT: You may.

MR. REIZENSTEIN: That may assist as well.

Bit of a helicopter view.

Mr. Habib's involvement in this conspiracy began with these introductions and then the seizure of the first shipment. And we have reviewed significant text messages and credible evidence that he was aware of it, he was aware of what was seized, and then essentially vouched for him, meaning the person who became the informant, by saying, I know him. He did not steal this. And now it's on us, meaning him and approximate informant. And encouraged the informant to do several things to pay this money back.

That translated into this second shipment for which we have seen credible evidence that Mr. Habib was aware of. And for example — and this is something I shared with Mr. Habib that the government provided in discovery — when the second shipment was stopped in New Jersey, there was a picture

circulating of a police car behind the trucks. Now, it turns out that -- I have found out through the government, who, you know, answered my questions that that picture was taken by the informant, but it was shared with Mr. Habib, who then shared it with other people in the discovery as an answer to, you know, where is this second shipment, why has it not reached the warehouse.

And we felt that that was a significant piece of evidence that linked him to this conspiracy. And the second shipment is the conspiracy that's charged in Count One before the Court.

And so again, when you hear some hesitancy, it's on Mr. Habib, it's because in one very sad tragic sense, he vouched and stook up for somebody who was involved in something, but that went more than the he's good for it; it crossed over the line into what is clearly criminal conspiracy conduct. And we acknowledge that and stipulate to it based on the evidence, the discovery we received.

THE COURT: Thank you.

So with respect then to that second shipment, the one following the seizure in Kansas City, did you agree with others to participate in violation of the narcotics law by distributing cocaine?

(Counsel conferred with defendant)

THE DEFENDANT: So I guess my role was to help the

informant successfully get the drugs to the warehouse to be distributed to help pay back his debt.

THE COURT: And you understood that -- did you understand that more people other than just the informant would be involved in transporting the drugs to that warehouse to help pay off the debt?

THE DEFENDANT: Yes.

THE COURT: Is that sufficient?

MR. SHAHABIAN: I might ask if the defendant was in communication with people other than who he believes to be the informant in connection with the shipment.

THE COURT: Were you in contact with anyone other than the informant --

THE DEFENDANT: Yes.

THE COURT: -- in connection with the shipment?

THE DEFENDANT: Yes, there was a group chat.

THE COURT: And that group chat was discussing the shipment of narcotics?

THE DEFENDANT: Correct.

THE COURT: Thank you.

MR. REIZENSTEIN: And Judge, again, I would just refer to that one piece of evidence in discovery. And it's one of many. But it occurs to my mind of sharing the picture of the police behind the truck. And that was shared to -- that was from the informant shared to the rest of the co-conspirators

and others in this case.

THE COURT: Thank you.

Mr. Shahabian, let me ask you if you would summarize what the government's evidence would be if this case were to go to trial.

MR. SHAHABIAN: Yes, your Honor.

Had this case gone to trial, the government would have introduced evidence in the form of the seizure of 400 kilograms of cocaine outside the New Jersey warehouse in March 2022; as well as signal messages the government obtained between the defendant and his co-conspirators in group chats, coordinating the delivery and shipment of this load of narcotics that was delivered over several loads; updates on the stop of the truck by law enforcement and the seizure of narcotics; as well as attempts by the defendant and his co-conspirators to discover what had happened to the narcotics, who was responsible, were people going to take polygraphs to see who turned them in.

In addition, the government would have introduced recordings of the defendant and his co-conspirators discussing the narcotics shipment and the seizure of the narcotics, as well as lab reports confirming that what was seized was 400 kilograms of cocaine.

THE COURT: Thank you.

MR. SHAHABIAN: Oh, as well as evidence from the defendant's cell phone, from his iCloud accounts, from the

phones and iCloud accounts of his co-conspirators confirming that it was him who was using the screen name *Gatto* in these signal chats.

THE COURT: And Mr. Reizenstein, do you know of any valid defense that would prevail at trial?

MR. REIZENSTEIN: No. We had discussed defenses, but he's pleading guilty based on the fact that he is guilty.

THE COURT: Okay. And do you agree there is a sufficient factual predicate for a guilty plea?

MR. REIZENSTEIN: Yes, I do.

And there were additional messages in discovery that I just recall as well about the day before talking about the anticipation of the shipment the next day that were attributed to Mr. Habib. And those were the focus of what our defenses would be and what we believe the evidence was against him, as well as the introduction which formed the basis of the conspiracy.

THE COURT: Thank you.

And more generally in connection with the guilty plea allocution, are there any additional questions that either counsel would like me to ask?

MR. SHAHABIAN: No, your Honor.

MR. REIZENSTEIN: None by the defense.

THE COURT: So Mr. Habib, I'll now ask you, how do you plead to Count One of the indictment?

THE DEFENDANT: Guilty.

THE COURT: And do you also admit the forfeiture allegation in the indictment as well?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Habib, because you acknowledge that you are, in fact, guilty as charged in Count One of the S3 indictment, because I am satisfied that you know of your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence which may be imposed, because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on the offense in Count One in the indictment.

The probation department will want to interview you in connection with the presentence report that it will prepare. This is the report that I mentioned a few times earlier this afternoon.

Mr. Reizenstein, do you wish to be present for any interview in connection with the presentence report?

MR. REIZENSTEIN: Yes, I do.

THE COURT: I order that no interview should occur unless counsel is present.

If you choose to speak to -- I'm sorry --

MR. REIZENSTEIN: My client was asking me where the interview would take place, here or at MDC.

THE COURT: I'm not confident.

MR. REIZENSTEIN: In the past I believe it was occurred -- I've seen it at -- well, it was a different facility, but at the prison where someone was being helped.

THE COURT: That's my understanding as well. I believe it would be at the jail. It may be done remotely, I'm not sure.

Now, Mr. Habib, if you do speak -- if you choose to speak to the probation department, I urge that anything you tell them is truthful and accurate. I will review this report very carefully; it will be important to me in deciding what sentence to impose.

You and your attorney will have the opportunity to review the report and comment on it at the time of your sentencing. So please read it, discuss it with your attorney. If you see any mistakes in it, bring it to Mr. Reizenstein's attention so he can raise them with the probation department or with me at sentencing.

About 90 days from today will bring us to mid March.

Does March 19th at 10 a.m. work for the parties?

MR. REIZENSTEIN: May I have a moment to check, Judge?

THE COURT: Yes. Sure.

MR. REIZENSTEIN: I make it a habit to turn my phone off in court proceedings.

THE COURT: Probably safe to do that.

MR. REIZENSTEIN: One embarrassing moment over 36 years was enough.

Judge, the date was March 19th?

THE COURT: Correct.

MR. REIZENSTEIN: Yes, I'm available. That works.

THE COURT: Great.

And government?

MR. SHAHABIAN: The government is available as well, your Honor.

THE COURT: Okay. So we'll do sentencing March 19th at 10 a.m.

I direct the government to provide the probation officer with its factual statement within seven days of today's proceeding.

And Mr. Reizenstein, please arrange for Mr. Habib to be interviewed by the probation department within the next two weeks.

I refer counsel to my individual rules in criminal cases for rules regarding sentencing submissions. The defense submissions are due two weeks before sentencing; the government's is due the week before.

Mr. Reizenstein, if there are any redactions or sealed filings that you wish to make, just be sure to comply with my rules regarding that, including providing me with an unredacted version that's not publicly filed but highlights what

redactions you are requesting.

Are there any other matters we should then address this afternoon, Mr. Shahabian, from the government?

MR. SHAHABIAN: Not from the government, your Honor.

THE COURT: Mr. Reizenstein?

MR. REIZENSTEIN: None from the defense.

THE COURT: Okay. Well, thank you.

I hope everyone stays well. And I'll see the parties again in March.

THE DEFENDANT: Thank you, your Honor.

Have a happy holiday.

* * *